# Exhibit A



EFiled: Aug 23 2012 11:28AM EDT
Transaction ID 46057498
Case No. N12C-08-232 JRJ CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

GRAFTECH INTERNATIONAL LTD.,       :
f/k/a UCAR INTERNATIONAL INC.,     :
and GRAFTECH INTERNATIONAL         :
HOLDINGS INC.,f/ka UCAR CARBON     :
COMPANY INC.,                      :     C.A. No.: _____
                                   :
        Plaintiffs,                :
                                   :     CCLD
                                   :
    v.                             :
                                   :
ACE AMERICAN INSURANCE             :
COMPANY, f/k/a CIGNA INSURANCE     :     JURY TRIAL OF 12 DEMANDED
COMPANY, a Pennsylvania corporation, :
and PACIFIC EMPLOYERS INSURANCE    :
COMPANY, a Pennsylvania Corporation, :
                                   :
        Defendants.                :

## COMPLAINT

Plaintiffs for its Complaint states as follows:

## PARTIES

1.     Plaintiffs GrafTech International Ltd., f/k/a UCAR International Inc., and

GrafTech International Holdings Inc., f/k/a UCAR Carbon Company Inc., (collectively,

"GrafTech" or the "Plaintiffs") are Delaware corporations with their principal place of business

in Ohio.

2.     Defendants are insurance companies organized under the laws of the

Commonwealth of Pennsylvania and have their principal places of business in Pennsylvania,

located at 436 Walnut Street, Philadelphia, Pennsylvania, 19106.

## Background

### (A)    Duplicity and Improper Forum Shopping by Defendants

1

3.     On October 12, 2006, Plaintiffs notified Defendants, jointly and severally, that they had been sued by former and current employees of Alcoa or their estates for alleged injurious exposure to various products sold by Plaintiffs ( hereafter, "Underlying Litigation").

4.     On November 17, 2006, Defendants promised that a coverage response to the Underlying Litigation would be forthcoming from its agent Resolute Management.

5.     In fact, no coverage response was forthcoming, and Plaintiffs' insurance broker, Willis, had to send a second notice and request for defense and indemnity to Defendants' agent, Resolute Management.

6.     Finally, on October 8, 2009,   Defendants' agent, Resolute Management, responded to Willis and denied that the policies provided any defenses to Plaintiffs because (1) of certain deductible endorsements contained in the policies, (2) the insurer(s) were liable to pay defense/damages under the policies only to the extent that settlements or judgments were paid by the insured in excess of the deductible(s), and (3) the policies contained various pollution exclusions.

7.     In 2011, after the per occurrence deductible of a certain policy had been exhausted through the payment by Plaintiffs of qualifying "allocated loss adjustment expense" or "ALAE" (in this instance attorney fees that triggered a 2002 policy issued by Pacific Employers Insurance Company to Plaintiffs ) (hereafter, "2002 Policy"), the Plaintiffs again notified Defendants, through their agent, Resolute Management, that Defendants should provide defense and indemnity to Plaintiffs, since the deductible had now clearly been exhausted.

8.     On November 8, 2011, Defendants reserved rights and demanded that the insured co-operate and provide information so that Defendants "could assess GrafTech's potential

liability," when in fact the Defendants had no intention of providing defense or indemnity to its policyholder.

9.    The Defendants' misuse of the co-operation clause in the 2002 Policy -- for the dual ulterior purposes of (1) building its file for the sole purpose of denying coverage, and (2) racing to the courthouse and filing a peremptory "declaratory" action -- led to Defendants filing an inappropriate action for a declaratory judgment action because the dispute concerned defense costs already expended by the Plaintiffs in fulfillment of the applicable policy deductible.

10.    After receiving additional information requested in their November 8, 2011 reservations of rights letter to the Plaintiffs, Defendants, on March 23, 2012, again in bad faith, demanded from Plaintiffs additional voluminous records including, for the first time, copies of every lawsuit filed by Alcoa employees or their estates against Plaintiffs, when Defendants had no intention of voluntarily providing any defense or indemnity to the Plaintiffs concerning any lawsuit.

11.    After receiving additional information from Plaintiffs, including over seventy summonses and complaints concerning the Underlying Litigation, and copies of Plaintiffs' defense counsel invoices, the Defendants stated that they were reviewing such information and would respond to Plaintiffs' request for defense and indemnity under the 2002 Policy (Defendants referred to it as "Spiked"). (See letter of June 26, 2012, attached hereto as Exhibit "A").

12.    After reviewing documents received from the Plaintiffs, the Defendants, with no intention of providing defense or indemnity to the Plaintiffs under any applicable policy, requested still more information from Plaintiffs regarding defense costs incurred by the Plaintiffs.

3

13.   In conformity to their obligations to cooperate with the Defendants under all applicable insurance policies in dispute between them, Plaintiffs on August 6, 2012, sent to Defendants, because of a voice mail request, a CD containing additional attorney invoices so that Defendants would finally have to respond, as promised, to Plaintiffs' request for defense and indemnity.

14.   In early or mid-August 2012, the Defendants' coverage counsel promised that the Defendants were evaluating Plaintiffs' requests for defense and indemnity of the Underlying Litigation and would send a final coverage response.

15.   Still later, after conveniently avoiding telephone calls about the promised written response, Defendants' coverage counsel further promised, by electronic mail, to send a letter to Plaintiffs' counsel. (See Exhibit "B").

16.   The promised letter described in paragraph 15 was part of a strategy by Defendants to prejudice Plaintiffs.

17.   Defendants thereafter, on August 21, 2012, filed a "peremptory strike" lawsuit against Plaintiffs and only after filing sent to Plaintiffs a "final" coverage letter simultaneously. (See Exhibit "C", appended hereto.)

**B.   The 2002 Pacific Employers Policy that GrafTech has Elected to Access**

18.   The 2002 Policy described herein responds, on behalf of the Plaintiffs, to the costs of Plaintiffs' defense of the Underlying Litigation, because, as Defendants themselves assert, "Claimants alleged that they were exposed to hazardous substances at numerous facilities where GrafTech products were sold or used as far back as 1943 and as recently as 2011." (See Exhibit "D", appended hereto; the "Peremptory Lawsuit.")

19.     The Plaintiffs requested that Pacific Employers Insurance Company defend the Plaintiff under the 2002 policy and pay for Plaintiffs' costs of defending the Underlying Litigation.

20.     The Defendants were aware that Delaware law supported Plaintiffs' position that Plaintiffs could make a claim upon the 2002 Policy, but argued that perhaps Connecticut law might apply. (See Exhibits "E", "F" and "G.")

21.     · The Plaintiffs' defense costs pertaining to a single claim (a case against the Plaintiffs styled *Henry January*) exceed the $250,000 deductible of the 2002 Policy, of which Defendants are aware, and yet Defendants have refused to pay to Plaintiffs the difference between the 2002 Policy deductible and fees incurred by Plaintiffs in defending the *January* case, without any justification.

22.     The 2002 Policy deductible applies on a "per occurrence basis," and the 2002 Policy, issued to Plaintiffs in Delaware,s hould be interpreted under Delaware law.

23.     Under Delaware law, a policyholder's right to select a policy to respond to a claim is absolute.

24.     Under Delaware law and the terms of the 2002 Policy, defense costs associated with each underlying lawsuit composing the Underlying Litigation were not required to fulfill the policy deductible, because the policy deductible is fulfilled on the basis of an "occurrence" and not "claims." Therefore, under the facts of this matter, all of the Underlying Litigation constitutes a single occurrence for the purposes of the 2002 Policy.

## COUNT I - BREACH OF CONTRACT

25.     Plaintiffs repeat and re-allege herein paragraphs 1 through 24 as written above.

26.     The 2002 Policy issued to Plaintiffs in Delaware provides defense and indemnity to the Plaintiffs in response to Plaintiffs' costs and liabilities arising from the Underlying Litigation.  A copy of the 2002 Policy is attached hereto as Exhibit "H".

27.     The Defendants were notified of the Underlying Litigation and demanded that the Plaintiffs co-operate with the Defendants before the Defendants considered providing defense and indemnity.

28.     Defendants misused the cooperation clause of the 2002 Policy and disingenuously repeated their demands for documents from the Plaintiffs, when the Defendants had no intention of providing any defense or indemnity to the Plaintiffs under the 2002 Policy or otherwise in response to the Underlying Litigation.

29.     Plaintiffs have spent approximately $1,709,000 in defending the Underlying Litigation, including more than $250,000 in defending the *Henry January* lawsuit alone.

30.     Defendants breached the terms and conditions of the 2002 Policy on August 21, 2012, when Defendants refused to pay to Plaintiffs' defense costs in excess of $250,000 to defend the *Henry January* lawsuit or otherwise.

31.     Defendants' breach of this insurance contract is ongoing, and Plaintiffs will incur additional defense costs payable by the 2002 Policy, and may also incur settlement or judgment costs.

32.     Defendants may not avoid their contractual obligation to Plaintiffs under the 2002 Policy or otherwise by asserting, as Defendants have in their lawsuit against Plaintiffs in the Southern District of New York (hereafter "the Peremptory Lawsuit"), that defense costs should be equitably allocated among the individual cases of the Underlying Litigation on a so-called pro-rata basis.

6

33.     Defendants may not avoid paying to Plaintiffs past and future defense costs by claiming that Plaintiffs' costs of defending each lawsuit composing the Underlying Litigation must exceed $250,000, notwithstanding that Plaintiffs' costs of defending the *Henry January* lawsuit in fact exceed $250,000.

34.     By waiting over two years from the date of receiving first notice of the Underlying Litigation before issuing a reservation rights letter to Plaintiffs, Defendants have waived all of their policy defenses and must reimburse Plaintiffs for all defense costs in excess of $250,000, as well as any settlement or judgment costs, under the 2002 Policy and otherwise.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants for breach of Defendants' contractual obligations under the 2002 Policy, and award damages to Plaintiffs in an amount in excess of $1,000,000, in addition to attorney fees and costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT II - BAD FAITH

35.     Defendants had a duty to act in good faith toward Plaintiffs in the claims management process under the 2002 Policy.

36.     Defendants acted in bad faith in failing to conclude the claims management process initiated by Plaintiff by filing the Peremptory Lawsuit.

37.     Defendants' actions and inactions were guided by Defendants' deliberate intention to file the Peremptory Lawsuit and establish some sort of litigation advantage over the Plaintiffs.

38.     Defendants' disingenuous conduct has and will cause Plaintiffs to incur unnecessary expenses.

39.     Defendants have falsely represented to Plaintiffs that Defendants needed more information in order to evaluate the Underlying Litigation when Defendants had no intention of doing so.

40.     After filing the Peremptory Lawsuit, Defendants, in bad faith, professed that they required still more information from Plaintiffs and were, lacking such information, allegedly unable to complete a review of Plaintiffs' defense costs. (See Exhibit "C").

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants on the claim of bad faith in an amount to be determined by the Court for compensatory and punitive damages, attorney fees and costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

Dated: August 22, 2012

Respectfully submitted,

ECKERT SEAMANS CHERIN &
MELLOTT, LLC

/s/ Penelope B. O'Connell
_____
PENELOPE B. O'CONNELL (DE 4898)
300 Delaware Ave., Suite 1210
Wilmington, DE 19801
302-552-2904
Attorneys for Plaintiff

OF COUNSEL:

STARK & KNOLL
David Hilkert, Esq.
3475 Ridgewood Road
Akron, OH 45333
T: (330) 376-3300
F: (330) 572-0327